IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DYNAMIC SOFTWARE SERVICES,<br><br>    Plaintiff,<br><br>v.<br><br>CYBERBEST TECHNOLOGY, INC,<br><br>    Defendant.<br>_____/ | No. C-13-04217 DMR<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [DOCKET NO. 28]** |

Defendant Cyberbest Technology, Inc. ("Defendant") moves to dismiss the claims brought by Dynamic Software Services ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(2) on the ground that the court lacks personal jurisdiction over Defendant. [Docket No. 28 (Def.'s Mot.).] The court conducted a hearing on June 26, 2014. For the reasons stated below, the motion is granted.

## I. BACKGROUND

**A. Procedural History**

On September 12, 2013, Plaintiff initiated this litigation, bringing three causes of action against Defendant: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) intentional interference with contractual relations. *See generally* Compl. [Docket No. 1].

On November 26, 2013, Defendant moved to dismiss for lack of personal jurisdiction. The court denied that motion without prejudice on December 11, 2013, ordering the parties to meet and

confer regarding jurisdictional discovery. Following discovery, Defendant brought the instant motion.

**B. Factual Allegations**

The facts below are taken from the Complaint as well as the parties' submissions for this motion. *See Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995) (in a motion to dismiss for lack of personal jurisdiction, court may consider not only allegations in complaint but also evidence relating to jurisdiction presented in affidavits[1] attached to motion papers).

Plaintiff and Defendant are both staffing agencies that provide temporary personnel for companies in the information-technology sector. Defendant maintains a pool of personnel from which it can draw when approached, either directly or through another staffing agency, with a particular short-term staffing need. Once Defendant agrees to provide an employee to a customer, Defendant places an employee from its personnel pool with the customer for an agreed-upon period of time. Defendant sometimes works directly with customers, but more often deals through other staffing agencies, such as Plaintiff, that arrange for the placement of Defendant's employees. The instant litigation arises out of such an arrangement, with Plaintiff acting as a middle man to place an employee from Defendant's pool with Plaintiff's third-party client, Xavient Solutions ("Xavient"), in Denver, Colorado. Plaintiff and Defendant signed a procurement contract to formalize their arrangement regarding placement of an employee with Xavient on August 12, 2013. The contract includes a clause stipulating that the agreement be "construed in accordance with, and governed by, the laws of the State of California." Compl. ¶ 7, Ex. A (Contract § 21).

Pursuant to the terms of the contract, the parties executed a purchase order in which Defendant agreed to provide the services of Dinesh Patra as a Web Logic Administrative Consultant for a six-month engagement with Xavient beginning on August 29, 2013. Plaintiff in turn executed a work statement that formalized its agreement with Xavient to provide Patra's services.

---

[1] Defendant presents its evidence in an improper manner. It offers argument without citations to an evidentiary record, and the only jurisdictional evidence it presents is purported interrogatory responses attached directly to the motion without an accompanying affidavit or declaration attesting to their veracity. Thus, the court does not consider Defendant's evidence. However, because Plaintiff correctly submits the same set of interrogatory responses in its filings, the court will consider them.

2

The arrangement between Plaintiff and Defendant apparently broke down shortly thereafter. Plaintiff alleges that on August 26, 2013, Defendant abruptly informed Plaintiff that it would not be able to fulfill the purchase order. Plaintiff states that it attempted to hire a replacement for Patra in time to meet its obligation to Xavient, but that it was unable to do so due to the short timeframe and urgency of the project for Xavient. In the Complaint, Plaintiff alleges that its failure to fulfill the Xavient contract negatively affected all of its business with Xavient. Xavient apparently terminated its relationship with Plaintiff after this suit was filed, resulting in the loss of a significant portion of Plaintiff's business.

**C. Evidence of Defendant's Contacts with California**

Jurisdictional discovery reveals that Defendant has maintained some contact with California. Defendant has earned 5.3 percent of its total revenue over the past two years[2] through business operations in California. In 2013, $274,196 of Defendant's total revenue of $5,859,201 was derived from "business conducted in" the state.[3] Defendant contracts with six staffing agencies that have a return address in California.[4] Defendant also provides staffing directly to one customer in California.

Defendant has placed, directly or indirectly, at least six employees in California over the past two years.[5] It has filed six visa applications with the Department of Labor over the same period of

---

[2] While Defendant has been in business for 13 years, it has only provided information related to the past two years of its operations. Defendant does not explain why it has not produced information for a longer period of time, though it does indicate that it made a good faith search using reasonable efforts to locate more records. For purposes of this motion, the court assumes that Defendant's contacts in California over the past two years are representative of Defendant's contacts in the state over the life of the company.

[3] Plaintiff's interrogatories define "business conducted in" California as "any and all work or services performed, either in California or directed at California, on behalf of any person or entity including DEFENDANT." Hanafi Decl. Ex. 7 (Special Interrogatory No. 2).

[4] Neither party has established the total number of staffing agencies with whom Defendant contracts.

[5] Neither party has established the total number of employees that Defendant has placed in the past two years.

time for employees in California.[6] Two of Defendant's currently placed employees work in California. Defendant maintains some contact with California-based employees, as those employees submit time cards to Defendant via email.

Plaintiff has produced other evidence of Defendant's ties to California through independent research. Plaintiff provides the result of a December 6, 2013 search of Glassdoor.com, an employment-data website, that lists 20 salaries for employees of Defendant based in California. Plaintiff also provides the result of a search of Myvisajobs.com, conducted on the same date, revealing that Defendant sponsored seven candidates for visas to work in California from 2001 through 2009. Plaintiff also provides a copy of a web page on Defendant's website entitled "Open Positions," also accessed on December 6, 2013, that appears to reveal that Defendant was soliciting applicants for five jobs in California at that time. Defendant claims that these listings are merely sample job postings.

**D. Evidence of Defendant's Lack of Connection To California**

Other evidence in the record tends to establish that Defendant lacks a significant connection to California. Defendant is incorporated in Florida, which is also its principal place of business. Defendant is not registered to do business in California, nor does it have a registered agent for service of process in the state. Defendant owns no property in California, has not registered any vehicles in California, and does not maintain any bank accounts in the state. Defendant claims that it does not solicit clients or vendors in California or any other state, but rather only responds to solicitations. Indeed, Defendant asserts that Plaintiff initiated contact between the parties with an email solicitation with respect to the employee placement at issue in this case. Defendant places most of its employees through other staffing agencies based in the southeastern United States. Defendant claims that it maintains no control over where its employees are placed when it works through other staffing agencies.

Defendant also claims that it generally is not aware of the location of companies with which it works, because it conducts most of its negotiations over the internet. In particular, Defendant

---

[6] Presumably Defendant filed the six visa applications on behalf of the same six employees placed in California, though the evidence does not establish this fact directly.

4

claims that it did not have a clear indication of Plaintiff's ties to California until it received the proposed procurement agreement listing Plaintiff's return address in California. Defendant further notes that Plaintiff did not register to do business in California until September 16, 2013, after the parties' relationship had already deteriorated. In addition, Defendant had no business relationship with Plaintiff prior to the events that gave rise to the instant dispute.

## II. Legal Standard

A party may assert lack of personal jurisdiction as a defense to a claim for relief. Fed. R. Civ. P. 12(b)(2). Where, as here, no applicable federal standard governs personal jurisdiction, a court must apply the law of the state in which it sits. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). California's long-arm statute allows courts to exercise personal jurisdiction over nonresident defendants to the extent permitted by the Due Process Clauses of the United States Constitution. *Id.* (citing Cal. Code Civ. P. § 410.10). For a court to exercise personal jurisdiction over a nonresident defendant who has not consented to the court's jurisdiction, the defendant must have "minimum contacts" with the forum such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citations omitted).

The plaintiff bears the burden of proving that a court has personal jurisdiction over the defendant. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). If a court rules on the issue of personal jurisdiction without holding an evidentiary hearing, it may grant dismissal only if the plaintiff has not made a prima facie showing that personal jurisdiction exists. *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1168 (9th Cir. 2006). The plaintiff cannot "simply rest on the bare allegations of its complaint." *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1999). However, the court must take uncontroverted allegations in the complaint to be true. *AT & T v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 588 (9th Cir. 1996). The court must construe conflicts between the parties over statements contained in the pleadings and affidavits in favor of the plaintiff. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

## III. Analysis

Plaintiff contends that this court has personal jurisdiction over Defendant because Defendant consented to such jurisdiction in agreeing to the terms of the parties' contract. Plaintiff argues in the alternative that this court has personal jurisdiction over Defendant because Defendant maintains "minimum contacts" with California. The court addresses each claim in turn.

**A. Consent**

Relying on *Nat'l Equip. Rental v. Szukhent*, 375 U.S. 311 (1964), Plaintiff argues that Defendant consented to jurisdiction in California because the parties' contract includes a choice-of-law provision stating that the agreement will be "construed in accordance with, and governed by, the laws of the State of California." *See* Compl. ¶ 7, Ex. A (Contract § 21). Plaintiff contends that the Court in *Nat'l Equip. Rental* found the defendant in that case had consented to personal jurisdiction in New York by agreeing to a similar provision. *See* 375 U.S. at 315-316. Plaintiff's argument, however, is based on a misinterpretation of *Nat'l Equip. Rental*, which concerned a contract between two parties, one based in Michigan and the other in New York. *Id.* at 312-13. The contract included a choice-of-law provision, as well as a clause designating an agent in New York for service of process on the Michigan party. *Id.* at 312, 315. The New York party filed a complaint alleging breach of contract in New York, and served the Michigan party's agent in New York. *Id.* at 314. The Court found that jurisdiction was proper in New York because service was carried out in accordance with the contract, and met the requirements for service of process under the Federal Rules of Civil Procedure. *Id.* at 313-14. In explaining its holding, the Court noted that the Michigan party, in designating an agent for service in New York, had agreed in advance to submit to that state's jurisdiction. *Id.* at 315-16. It reasoned that the choice-of-law provision served as further evidence of the parties' intent to litigate disputes arising out of the contract in New York. *Id.*

The holding in *Nat'l Equip. Rental* does not support the argument that a contracting party consents to personal jurisdiction in a particular forum merely by agreeing that any contract dispute will be governed by the laws of that forum. The existence of a choice-of-law provision may be one consideration in a jurisdictional analysis, but a choice-of-law provision by itself is "insufficient to confer jurisdiction." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985); *Siren Gaming, LLC v. Arviso*, No. 04-17508, 153 Fed. Appx. 420, 421 (9th Cir. Oct. 26, 2005) (defendant did not

6

consent to jurisdiction by signing agreement that incorporated choice-of-law provision, but not forum-selection clause). Thus, Defendant has not consented to personal jurisdiction in California by the mere act of agreeing that California law would govern the parties' contract.

### B. Minimum Contacts

Plaintiff argues in the alternative that Defendant maintained sufficient ties to California such that it is subject to personal jurisdiction. For a court to exercise personal jurisdiction over a nonresident defendant, the defendant must have "minimum contacts" with the forum state, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *See Int'l Shoe*, 326 U.S. at 316 (citations and internal quotation marks omitted). Minimum contacts may be established through a showing of either general or specific jurisdiction. *Schwarzenegger*, 374 F.3d at 801. Because Plaintiff argues both theories, the court considers each in turn.

#### 1. General Jurisdiction

General jurisdiction exists where a defendant's contacts with a state are "so 'continuous and systematic' as to render [the defendant] essentially at home" in the state, such that the state may in fairness force the defendant to answer for causes of action unrelated to its in-state activities. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011). In assessing the substantiality of a defendant's contacts with a state, courts examine the "[l]ongevity, continuity, volume, [and] economic impact" of those contacts, as well as the defendant's "physical presence . . . and integration into the state's regulatory or economic markets." *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1224 (9th Cir. 2011) (citing *Tuazon*, 433 F.3d at 1172) (internal quotation marks omitted). Specifically, courts consider whether the defendant sells products, solicits business, engages in business, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated in the state. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). Given that a finding of general jurisdiction allows for a defendant to be sued on claims that do not arise out of its activities in the forum state, the standard for general jurisdiction is "exacting." *Schwarzenegger*, 374 F.3d at 801.

7

Ninth Circuit cases establish that a corporation that does minimal business with the residents of a state, without maintaining a presence in that state or particularly targeting the state's residents, may not be subjected to general jurisdiction. For example, in *Bancroft*, the court found no general jurisdiction over a company that had engaged in licensing agreements with two television networks and "a handful" of vendors based in California, and that had made only "occasional, unsolicited sales" to California residents. 223 F.3d at 1086. In reaching its decision, the court emphasized that the defendant corporation was not registered in California, paid no taxes in the state, maintained no California bank accounts, and directed no advertising toward California. *Id. See also Mavrix*, 647 F.3d at 1225-26 (finding no general jurisdiction where the defendant solicited business of California residents through third parties and engaged in business relationships with California companies, but had no offices or staff in the state, was not registered to do business in the state, had no registered agent for service of process in the state, and paid no state taxes). Ninth Circuit precedent also establishes that "the mere existence of a contract with a party in the forum state does not constitute sufficient minimum contacts for jurisdiction." *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990) (citing *Burger King*, 471 U.S. at 478).

On the other hand, in *Gator.Com Corp. v. L.L. Bean, Inc.*, the court found that it could exercise general jurisdiction over the defendant, in spite of the fact that L.L. Bean lacked the traditional markers of presence in the state and conducted only a small portion of its business in the state. 341 F.3d 1072 (9th Cir. 2003). L.L. Bean was not registered to do business in California, paid no taxes in California, and had no agent for service of process in California. *Id.* at 1074. Furthermore, California sales amounted to only 6 percent of the company's revenue. *Id.* However, L.L. Bean sold "millions of dollars worth of products" in California, solicited California residents directly through email, purchased products from "numerous California vendors," maintained a "highly interactive" website through which California consumers made purchases and communicated with sales representatives, and conducted "national print and broadcasting marketing efforts" that encompassed California. *Id*. at 1074, 1078. The court, while acknowledging that it was a "close question," thus reasoned that general jurisdiction was appropriate "in light of L.L. Bean's extensive marketing and sales in California, its extensive contacts with California vendors, and the

8

fact that . . . its website is clearly and deliberately structured to operate as a sophisticated virtual store in California." *Id.* at 1078.

Even when crediting all evidentiary inferences in Plaintiff's favor as required, the court finds that Defendant's business activities in California are not sufficiently "continuous and systematic" to subject it to general jurisdiction. Like the defendants in *Bancroft* and *Mavrix*, Defendant lacks the traditional hallmarks of being "at home" in California. Defendant is not incorporated or registered as a business in California. Nor does Defendant claim California as its principal place of business. *See Goodyear*, 131 S.Ct at 2854 (finding that, for a corporation, the "paradigm forum for the exercise of general jurisdiction" is its place of incorporation or principal place of business). Defendant owns no California property or vehicles, and does not maintain any bank accounts in the state. Review of Defendant's operations demonstrates that it has engaged in a fairly insubstantial amount of business activity in California, and has only a handful of business relationships with California-based companies. While it does place about three employees per year in California, this does not suffice to establish Defendant's presence in the state—especially given that Defendant does not oversee these employees directly. The employees work for other companies, and are often placed indirectly through other staffing agencies.

While Plaintiff correctly asserts that the court may find general jurisdiction despite the fact that Defendant conducts a relatively small portion of its business with California companies, Plaintiff has not pointed to other factors that would suggest a finding of general jurisdiction is appropriate here. Where the court in *Gator.Com* found that L.L. Bean had "deliberately and purposefully availed itself, on a very large scale, of the benefits of doing business within the state," here the evidence reveals a far less purposeful and much smaller-scale effort. *See* 341 F.3d at 1078-79. Defendant has engaged in little if any marketing in California, does not solicit California vendors, and maintains no virtual presence in the state comparable to that of L.L. Bean. Even assuming for purposes of this motion that Plaintiff is correct in interpreting Defendant's "Open Positions" page as a list of job postings, those postings only serve as evidence that Defendant seeks to place personnel in the state; they do not necessarily amount to a solicitation of California

9

Case 4:13-cv-04217-DMR   Document 34   Filed 07/09/14   Page 10 of 17

residents.[7] In any event, the act of displaying a single web page with several job openings does not come close to establishing "continuous and systematic contacts" with California residents. *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1075 (9th Cir. 2011) ("[m]arketing to forum residents, at least where such marketing does not result in substantial and continuous commerce with the forum, does not support general jurisdiction"). Plaintiff relies exclusively on *Dorsey v. Am. Golf Corp.* for the proposition that a court may subject a party to general jurisdiction even when the party conducts a relatively small proportion of its total business in the forum state. *See* 98 F. Supp. 2d 812 (E.D. Mich. 2000). In *Dorsey*, the court found that the defendant had sufficient contacts with Michigan to subject it to general jurisdiction there, though only 7 of the 257 golf courses the defendant managed nationwide were located in the state. *See id.* at 815. Like *Gator.com*, however, *Dorsey* is distinguishable from the instant case: the defendant in *Dorsey* managed several golf courses in Michigan, oversaw employees in Michigan, and served as managing partner of a subsidiary organization that had been incorporated in Michigan. *Id.* at 813, 815. Here, the Plaintiff has not shown that Defendant's contacts with California have been similarly "continuous and systematic."

The court thus finds that Plaintiff has not established a prima facie showing that general personal jurisdiction exists.

**2. Specific Jurisdiction**

Specific jurisdiction is justified by the "nature and quality of the defendant's contacts in relation to the cause of action." *Data Disc, Inc. v. Sys. Tech. Associates*, 557 F.2d 1280, 1287 (9th Cir. 1977). In determining whether specific jurisdiction is appropriate, courts apply a three-part analysis:

> (1) The nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

---

[7] In fact, Defendant notes that most of the employment applications it receives over its website come from job seekers in India.

10

*Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). The plaintiff bears the burden of establishing the first two elements of the test, at which point the burden shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Id.* (quoting *Burger King*, 471 U.S. at 477).

The first element of the three-part test, known as "purposeful availment" or "purposeful direction," ensures "that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person." *Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991) (quoting *Burger King*, 471 U.S. at 475) (internal quotation marks omitted). While courts often use the term "purposeful availment" to describe this requirement, "purposeful availment" and "purposeful direction" are in fact two distinct standards with unique requirements. *Schwarzenegger*, 374 F.3d at 802. Courts generally apply a purposeful availment analysis in "suits sounding in contract," and a purposeful direction analysis in "suits sounding in tort."[8] *Id.*

Plaintiff does not specify which sub-test it is applying to the first prong of the specific jurisdiction test, but it appears to be applying the *Calder* test under a purposeful direction analysis. However, that test is generally reserved for intentional torts. *See Holland Am. Line Inc. v. Wartsila N. Am., Inc*, 485 F.3d 450, 460 (9th Cir. 2007) ("[I]t is well established that the *Calder* test applies only to intentional torts, not to . . . breach of contract and negligence claims"). In cases such as this one that involve both intentional tort and contract claims, courts in the Ninth Circuit generally ask whether the case sounds primarily in contract law or tort law in deciding whether to apply a purposeful direction or a purposeful availment analysis. *See Schwarzenegger*, 374 F.3d at 802 (stating that courts ask whether the plaintiff's suit "sound[s] in" tort or contract in determining which analysis to apply).

---

[8] The "purposeful availment" test is discussed below. In analyzing whether an out-of-state defendant has purposefully directed activities at a forum in committing an intentional tort against an in-state plaintiff, courts often use the "effects" test described in *Calder v. Jones*, 465 U.S. 783 (1984): asking whether the defendant has "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

11

Here, Plaintiff's suit sounds primarily in contract, not tort law: Defendant's alleged breach of contract forms the factual basis for all of Plaintiff's claims, including Plaintiff's claim of intentional interference with contractual relations. While that claim may indeed be classified as a tort, Plaintiff bases it solely on Defendant's failure to fulfill its contractual obligation, rather than on some independent act by Defendant. *See* Pl.'s Mot. at 8; Compl. ¶¶ 23–27. Indeed, in alleging that Defendant "intentionally disrupted" Plaintiff's ability to perform its contract with Xavient, Plaintiff merely restates its breach of contract cause of action, alleging no additional facts. *See* Compl. ¶¶ 16, 25. Courts do sometimes apply the *Calder* test under a purposeful direction analysis to cases involving claims of intentional interference with contractual relations. They generally only do so, however, where the plaintiff cites an overt act the defendant took to intentionally interfere with the plaintiff's contractual relationships. Here, Plaintiff has alleged no similar overt act by Defendant. *See, e.g., Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1128, 1131 (9th Cir. 2003) (applying *Calder* test where plaintiff alleged that defendant had encouraged third party to terminate its agreement with plaintiff); *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1258-60 (9th Cir. 1989) (applying *Calder* test where plaintiff alleged that defendant made negative statements about him to his employer, interfering with his contractual employment relationship); *CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d 1107, 1111 (9th Cir. 2004) (applying *Calder test* where defendant entered into new contract that it knew would interfere with a separate agreement between plaintiff and a distributor).

Since Plaintiff's case sounds primarily in contract, the court shall apply a purposeful availment analysis. *See Sher*, 911 F.2d at 1362 (applying purposeful availment analysis tailored to the contract context because, "[a]lthough some of [the plaintiff's] claims sound in tort, all arise out of [his] contractual relationship with the defendants"); *Panthera Railcar LLC v. Kasgro Rail Corp.*, No. C 12-06458 SI, 2013 WL 1996318, at *4 (N.D. Cal. May 13, 2013) (applying purposeful availment analysis tailored to contract context because "all of the tort claims arise out of [the plaintiff's] contractual relationship with defendants"). It is well settled that "an individual's contract with an out-of-state party alone" does not "automatically establish sufficient minimum contacts in the other party's home forum." *Burger King,* 471 U.S. at 478 (emphasis in original omitted); *see*

12

1  *also Roth,* 942 F.2d at 621 ("the existence of a contract with a resident of the forum state is
2  insufficient by itself to create personal jurisdiction over the nonresident"). Instead, courts generally
3  find that a defendant must "reach out beyond one state and create continuing relationships and
4  obligations with citizens of another state" in order to be subject to jurisdiction in that state. *Burger*
5  *King*, 471 U.S. at 473 (citations and internal quotation marks omitted). In determining whether a
6  defendant has purposefully availed itself of the privilege of conducting activities in a state, courts
7  looks to the prior negotiations between the parties, the contemplated future consequences of the
8  contract, the terms of the contract, and the parties' actual course of dealing. *See Burger King*, 471
9  U.S. at 479.

10  In *Burger King*, the Court held that the defendant had purposefully availed himself of the
11  privilege of conducting business in Florida by entering into an agreement for a Burger King
12  franchise in Michigan. 471 U.S. at 487. The Court found that the defendant had reached out to
13  Burger King headquarters in Florida in order to take advantage of the benefits of being a Burger
14  King franchisee. *Id.* at 479-80. The Court also found that the defendant had envisioned "continuous
15  and wide-reaching contacts with Burger King in Florida" in signing the agreement, which was to run
16  for 20 years and required payments of over $1,000,000. *Id.* at 480, 485. The Court further held that
17  the defendant "received fair notice from the contract documents and the course of dealing that he
18  might be subject to suit in Florida." *Id.* at 487. The parties spent five months negotiating their
19  agreement, and the defendant engaged in a "continuous course of direct communication by mail and
20  by telephone" with the plaintiff's Florida headquarters over the course of several years during which
21  the agreement was in effect. *See id.* at 481, 485. The Court reasoned that a choice-of-law provision
22  in the contract, while by itself "insufficient to confer jurisdiction," reinforced the "[defendant's]
23  deliberate affiliation with the forum state and the reasonable foreseeability of possible litigation
24  there." *Id.* at 482. The Court thus concluded that the exercise of personal jurisdiction was
25  appropriate. *Id.* at 487.

26  Where the defendant does little more than sign a single, short-term contract with the plaintiff,
27  on the other hand, courts do not find purposeful availment. For example, in *Boschetto v. Hansing*,
28  the court found that the defendants had not purposefully availed themselves of the privilege of

13

1   conducting business in California by the mere act of entering into a contract over an online auction
2   site to sell a car for $34,106 to the plaintiff in California.  539 F.3d 1011, 1017 (9th Cir. 2008).
3   While the defendants knew that the plaintiff was based in California, the court reasoned that the
4   purposeful availment requirement was not met because the transaction was only a "one-shot affair."
5   *Id*. at 1017, 1018. The court noted that neither the plaintiff nor the defendants assumed any
6   continuing obligations under the contract, and that performance of the contract did not "require the
7   Defendants to engage in any substantial business in California."  *Id.*

8   In *Azzarello v. Navagility*, the court found that the defendant had not purposefully availed
9   itself of conducting business in California, though it had received a $300,000 bridge loan from the
10  plaintiff, a California resident, in response to an email solicitation.  No. C-08-2371 MMC, 2008 WL
11  4614667 at *1, *5 (N.D. Cal. Oct. 16, 2008).  The defendant had procured the loan to fund business
12  operations in New York.  *Id.* at *3.  While the court found that the defendant's solicitation of the
13  loan weighed in favor of a finding of purposeful availment, it reasoned that this fact alone was not
14  sufficient to establish purposeful availment.  *Id.*  The court likewise found that neither the
15  defendant's knowledge that the plaintiff was based in California nor the fact that the defendant
16  communicated via email with the plaintiff were sufficient to establish purposeful availment.  *Id.*
17  Instead, the court rested its holding on the fact that the transaction was a "discrete encounter,"
18  contemplating no further action by either party.  *Id.*  The court further reasoned that the contract
19  would not have any effect in the forum state, given that the loan was intended to fund operations in
20  New York—another fact that weighed against a finding of purposeful availment.  *Id.*

21  Here, Defendant's contacts with California fall much closer to the defendants' contacts with
22  the forum state in *Boschetto* and *Azzarello* than to the defendant's contacts in *Burger King*.  First,
23  the contracting parties appear to have foreseen only minimal future consequences.  Plaintiff has not
24  sought to establish that the contract was to lay the groundwork for future transactions between the
25  parties. Rather, the contract appears to be a "one-shot affair," governing the placement of only a
26  single employee for six months—similar in this sense to the sale of the car in *Boschetto* or the bridge
27  loan in *Azzarello*.  *See* 539 F.3d at 1017; 2008 WL 4614667 at *1, *5.  Furthermore, the fact that the
28  contract concerned the placement of an employee in Colorado rather than California likewise weighs

14

against a finding of purposeful availment. *See Azzarello*, 2008 WL 4614667 at *3 (fact that contract governed operations outside the forum state weighs against purposeful availment).

There is likewise little in the parties' interactions prior to the formation of the contract that would weigh in favor of a finding of purposeful availment. Defendant did not reach out to create a relationship with Plaintiff. *See Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1478 (9th Cir. 1986) ("[T]he purposeful availment analysis turns upon whether the defendant's contacts are attributable to 'actions by the defendant *himself*,' or conversely to the 'unilateral activity of another party'") (quoting *Burger King*, 471 U.S. at 475) (emphasis in original). Rather, it was Plaintiff who solicited business from Defendant in an e-mail. This is unlike the situations in *Burger King*, *Boschetto* and *Azzarello*, where the defendants' efforts to establish a business relationship with the plaintiffs weighed in favor of purposeful availment. *See* 471 U.S. at 479-80; 539 F.3d at 1017; 2008 WL 4614667 at *3. *See also Roth*, 942 F.2d at 622 (finding the fact that plaintiff initiated contact to weigh in defendant's favor).

Nor has Plaintiff presented evidence that the parties engaged in extensive negotiations prior to the formation of the contract that would have put Defendant on notice that it might be subject to jurisdiction in California. The parties signed their agreement less than two weeks after their first contact, and there is no evidence in the record that they bargained extensively over the contract's terms.[9] *See id.* Furthermore, there was little in the parties' course of dealing that should have alerted Defendant to the possibility that it might be subject to suit in California. Whereas in *Burger King* the defendants engaged in a "continuous course of direct communication by mail and by telephone" with the plaintiff's Florida headquarters over the course of several years, here the evidence reveals a handful of e-mail communications over several weeks. *See* 471 U.S. at 481. Mere exchanges of emails or phone calls between the parties do not suffice to establish purposeful availment. *See Azzarello*, 2008 WL 4614667 at *3; *see also Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985) ("ordinarily use of the mails, telephone, or other international communications

---

[9] Plaintiff claims that Defendant "admitted it engaged in 'ongoing communications' with Plaintiff over the contract and the start date for Defendant's personnel," but does not cite to anything to establish this contention. Pl.'s Opp. at 10.

15

simply do not qualify as purposeful activity invoking the benefits and protection of the forum state") (internal quotation marks, citations, and alterations omitted).

Thus, the only two significant factors here that might weigh in favor of a finding of purposeful availment are the California choice-of-law provision in the parties' agreement, and Defendant's apparent knowledge that Plaintiff's principal place of business was in California.[10] However, as the *Boschetto* and *Azzarello* courts found, mere knowledge that the plaintiff is based in the forum state is insufficient to establish purposeful availment. *See* 539 F.3d at 1018; 2008 WL 4614667 at *3. And while a choice-of-law provision may reinforce the "[defendant's] deliberate affiliation with the forum state and the reasonable foreseeability of possible litigation there," by itself it is likewise "insufficient to confer jurisdiction." *Burger King*, 471 U.S. at 482. In attempting to establish that Defendant's contacts with the forum state went beyond Defendant's single contract with Plaintiff, Plaintiff offers two additional factors: "numerous wrongful acts" that Defendant "directed at California," and the fact that Defendant conducted 5.3 percent of its business in the state. Neither of these, however, are relevant to the question of whether Defendant purposefully availed itself of the privilege of conducting business in California. The "wrongful acts" to which Plaintiff refers appear to be Defendant's breach of its contract with Plaintiff. *See* Compl. ¶¶ 23-27. However, in a purposeful availment analysis in cases that arise out of the parties' contractual relationship, courts look not to the defendant's actions in breaching the contract, but rather to the defendant's actions in forming and maintaining the contractual relationship. *See, e.g., Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (finding that, in contracts cases, courts typically focus on "activities such as delivering goods or executing a contract"). The total amount of business Defendant conducted in the forum is not relevant to the purposeful availment analysis in the contract context. *See Azzarello*, 2008 WL 4614667 at *4 ("[I]n a breach of contract case, it is only the 'dealings *between the parties in regard to the disputed contract*' that are relevant to the minimum contacts analysis") (quoting *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1278 (7th Cir. 1997)) (emphasis in original).

---

[10] The court assumes that Defendant inferred Plaintiff's principal place of business to be in California when Defendant received the agreement listing Plaintiff's California return address.

16

The court finds that Plaintiff has failed to establish a prima facie showing that Defendant purposefully availed itself of the benefits of conducting business in California. Plaintiff has failed to make a prima facie case that specific jurisdiction exists. The court therefore declines to address the remaining specific jurisdiction factors. *See Boschetto*, 539 F.3d at 1016 ("[I]f the plaintiff fails at the first step [of the specific jurisdiction analysis], the jurisdictional inquiry ends and the case must be dismissed.") (citation omitted).

### III. Conclusion

For the reasons above, Defendant's motion to dismiss for lack of personal jurisdiction is **granted**.

Dated: July 9, 2014

DONNA M. RYU
United States Magistrate Judge